In the case of the Bank against Campbell and others, the opinion of the court was delivered by Dunkin, Ch., as follows :
Dunkin, Ch.
On the points discussed by the Chancellor, this court is satisfied with his conclusions, and do not deem it necessary to add any thing to the reasoning of the decree.
The question involved in the sixth ground of appeal, was not considered by him, because, from the slight or imperfect manner in which it was presented at\the hearing, it had escaped his further notice. It might well be so. The point is not presented by the pleadings, either in the answer of the trustees or of the appellant. The answers of the trustees and of the Theatre Company admit the execution of the mortgage of May, 1837. “The only question left open,” says the Chancellor, “ as between the parties mentioned,” (i. e. the Bank of the State and the trustees,) “ is, whether the mortgages are unsatisfied and forfeited ; and the answer of the trustees in this suit solves that question against ¡them.” But it is justly insisted on the part of the appellant, that *190 he is not bound by the answer of the trustees — that he stands on his own rights, unaffected by the questions raised or admissions made by the trustees.
It is proper, then, first, to inquire whether, as between the Bank and W. A. Carson, the decree for foreclosure can be sustained, independent of his admissions. The mortgage bears date the 24th May, 1837. It is in the name of all the five trustees ; recites a note of six thousand dollars made by the trustees, and purports to convey the entire premises to the Bank by way of mortgage, to secure the payment of this note and its renewals, and of any other note or notes which the trustees might thereafter have discounted by that institution. The mortgage bears the signature of only four out of the five trustees. But in the account book of the trustees, kept by their clerk and treasurer, the nett proceeds of the first note is carried to their credit on the 25th May, 1837, as “ discounted by the Bank of the State, and on mortgage of the premises.” The mortgage was recorded on the 5th June, 1837, and notes were subsequently made and signed by all the trustees, and discounted by the Bank of the State, amounting, at one period, to the sum of eighteen thousand dollars. “There is no principle,” says Chancellor Kent, in Wendell vs. Van Rensselaer, 1 J. C. R. 354, “ better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares that if one man knowingly, though he does it passively, by looking on, suffers another to purchase, and expend money on land under an erroneous opinion of title, without making known his claim, he should not af-terwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel. Qui tacet, consen-tiré videtur. Qui-potest et debet vetare, jubet.” If Mr. Carson, or any one representing him, had relied on the defence now assumed, his conscience would be bound by the equitable estoppel. His signature is proved to the notes, to secure which the mortgage was executed. On the next day, an entry is made in a book kept by their own clerk, open to the inspection of all, and to which all the trustees must be presumed to be privy, that the discount of the note was made by the Bank of the State “ on mortgage of the premises,” and the mortgage was placed on the records of the country in ten days afterwards. Did he not then know of the mortgage ? But if a mere bystander is estopped, who, from fraud or folly, permits injury to be done, how much *191 more strongly should the principle be enforced against one who has participated in the advantages of the sale, and received his proportion of the consideration money. Certainly under such circumstances, very slight evidence of acquiescence would preclude a defendant from insisting on his legal title. If Mr. Carson had made the defence, the court is of opinion, that on the evidence submitted, it would not have availed him. The inquiry then remains whether the purchaser at sheriff’s sales is in any better condition.
The rights of a purchaser at-sheriffs’ sales are very fully considered in the decree, and it is proposed only to apply the principle to the case presented by the appeal. The rule is well settled, that a person having a particular equity is preferred to a general incumbrancer on-the-estate. In Ashe vs. Livingston, 2 Bay, 80, even an unrecorded mortgage was declared to have precedence over a junior judgment, and the rights of an equitable mortgagee are fully recognized in Read vs. Simons, 2 Dess. R. 552, and Dow vs. Ker, Sp. Eq. 414. The purchaser at sheriffs’ sales is invested with all the rights of the creditor, and no more, and these are shown to be subordinate to the equitable rights of the Bank.
The decree declares the defendant liable to account for the rents and profits from the date of his purchase, in March, 1842, and this is the foundation of the eleventh ground of appeal. All the court are of opinion that the account for rents and profits cannot be carried beyond the period when the demand was made, to wit: the 31st October, 1843. In this respect, the decree is modified. In all other matters, the decree of the circuit court is affirmed, and the appeal dismissed.
Johnson, Oh. concurred.
In the case of Rose and others against Martin, Starr & Walter and others, Dunkin, Ch. delivered the opinion of the court, as follows:
Dunkin, Ch.
It was not doubted at the hearing, nor is it susceptible of reasonable doubt, that Martin, Starr <£ Walter occupy; precisely, the position of the Bank of the State, from whom they purchased the judgment against the complainants.
In addition to what is said in the decree,* it may be observed that, by the rules of law, mortgages should be paid according to *192 their priority. The complainants were not liable for the fire loan ; and on general principles, they might well insist that the proceeds of the mortgaged premises should be first applied to the extinguishment of that debt to secure which the mortgage of May, 1837, was given, and for which only they are sureties. But the action of the Bank has changed the order of payment, has established a particular equity, as between themselves and the complainants, to have the payment of the first mortgage postponed to that of the fire loan. They have properly obtained a decree in derogation of the ordinary rights of the sureties ; and which rights might, probably, be insisted on against all others except the Bank of the State. Having, by their previous action, thus varied the position of the complainants, they cannot be now permitted to enforce their judgment at law, and leave the complainants to litigate their ulterior rights under these disadvantages.
It is ordered, that the decree of the circuit court be affirmed.
Johjsson and Johnston, CC. concurred.

 It is believed, that after the order for an injunction was made in this case, his Honor, Chancellor Dunkin, filed a circuit decree, of which, however, no copy has ever come to the hands of the Reporter,